IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**TREVOR KENNTERRI HOSKINS**                                                                  **PETITIONER**

**V.**                    **NO.: 4:16CV155-MPM-DAS**

**ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI and**
**WARDEN SONJA STANCIEL**                                     **RESPONDENTS**

**MEMORANDUM OPINION AND ORDER**

Petitioner Trevor Hoskins, an inmate in the custody of the Mississippi Department of Corrections, has filed a *pro se* habeas petition pursuant to 28 U.S.C. § 2254 challenging the conviction and sentence for domestic aggravated assault that he received in the Circuit Court of Washington County, Mississippi. Having considered the submission of the parties, the State court record, and the law applicable to Hoskins' claims, the Court finds that the petition should be denied, for the reasons that follow.

**I**
**Background Facts and Procedural History**

Around 6:50 a.m. on July 4, 2012, Armilla Lucius ("Lucius") called the 911 dispatch in Greenville, Mississippi, and reported to responding officers that she had been beaten by Trevor Hoskins, who was asleep in the bedroom at the time she made the 911 call. *See* Doc. #14-3 at 88-89-91; 110-113. Officers testified that when they arrived at Lucius' residence, Lucius had to crawl to open the locked door for officers, and it was reported that she was covered in so much blood and had sustained so many bruises that she appeared to have suffered "a beating in astronomical proportions." *Id*. at 92-95; 110-13. The crime scene was described as "horrific," and officers found broken glass in the living room and blood in almost every room of the house. *Id*. at 100; 106-08; 111-13; *see also* Doc. #14-4 at 10-13. Guided by Lucius' statements regarding the location of her assailant, officers entered a bedroom and found a male, dressed in a

t-shirt and boxers, asleep in the bed. Doc. #14-3 at 96-97; 107. The male, subsequently identified as Hoskins, was arrested, and Lucius was taken to the hospital. *Id.* at 94; 97-98; 107.

According to Lucius' medical records, she suffered a broken arm, a broken leg, fractures in her nasal cavity, and bruising throughout her entire body as a result of the attack. Doc. #14-4 at 22. Dr. William Barber, the trauma surgeon who treated Lucius at the hospital, testified that she had a scalp laceration, a broken right arm, a broken left lower leg, and a broken nose. *Id*. at 34-35. These injuries would have been caused by multiple blows, Dr. Barber stated, and Lucius reported her pain level as a 10 out of 10 when she arrived at the hospital. *Id*. at 35. Dr. Barber testified that Lucius required surgery for both her arm and her leg fractures. *Id*. at 36. Testimony was also offered that Lucius' arm never healed properly, and that she has a permanent limp after the attack. *Id*. at 56-58.

Lucius reported that she had been dating Hoskins for approximately two months as of July 4, 2012. Doc. #14-3 at 101; Doc. #14-4 at 40. She testified that the evening of July 3, 2012, she had gone to sleep alone in her home and was later awakened by Hoskins hitting her on the head with a beer bottle. *Id*. at 43. Hoskins struck her with a baseball bat as she attempted to flee, and he pursued her through several rooms striking her with the bat. *Id*. at 43-48. Lucius lost consciousness, but when she came to, she dragged herself to a phone and placed a call to 911 while Lucius was lying in bed. *Id*. at 50-51.

Cuttings were taken from the t-shirt Hoskins was wearing at the time of his arrest, and DNA swabs were taken from Lucius. See Doc. # 14-3 at 115-117; Doc. #14-4 at 4-5, 13. The baseball bat used in the attack, which was found lying on an ironing board in the bedroom, was taken into evidence and swabbed. Doc. #14-3 at 101, 117; Doc. #14-4 at 4-5. Forensic testimony established that Lucius could not be excluded as the donor of DNA that was recovered from the cuttings of Hoskins' t-shirt and the bat. Doc. #14-3 at 115-117. In fact, the genetic

profile generated from the sample was determined to occur with a "frequency of approximately 1 and greater than 10 billion random unrelated people[.]" *Id*. at 120. In other words, the genetic profile generated from the evidence matched the victim. *Id*.

Linda Taylor ("Taylor"), a prior romantic partner of Hoskins' who was also one of his prior victims, was allowed to testify to Hoskins' prior assault of her "for purposes of intent and knowledge, lack of accident or mistake." Doc. #14-4 at 89; *see also* Doc. #14-3 at 66-68 and 74-75. Taylor dated Hoskins for approximately three months prior to his relationship with Lucius. Doc. #14-4 at 79-81. She testified that Hoskins tried to kill her in February 2012 after they argued concerning his allegations that she was seeing other men. *Id*. at 81-84. Taylor stated that Hoskins, who had been driving a vehicle in which she was riding at the time the argument began, parked the car, opened the passenger side door, and physically pulled Taylor from the vehicle while beating her with his fists and kicking her with steel-toed boots. *Id*. at 83-86. During this attack, he choked her, attempted to gouge out her eyes, and cut her neck with a knife. *Id*. at 86-87. He bit her face and back, and he actually bit off a part of her ear. *Id*. Taylor had to have operations on her jaw and ear and suffers hearing problems as a result of the attack. *Id*. at 91.

Hoskins did not testify, and the defense presented no witnesses. After an hour and five minutes of deliberation, the jury returned a guilty verdict. Doc. #14-4 at 134. Hoskins was sentenced to a twenty-year prison term in this case to run consecutively with the previous twenty-year sentence he received for his attack on Taylor. *Id*. at 138-39.

Hoskins' conviction and sentence were affirmed on appeal. *Hoskins v. State*, 186 So. 3d 898 (Miss. Ct. App. 2015), *reh'g denied* December 8, 2015, *cert. denied* March 10, 2016 (Cause No. 2013-KA-01785-COA). Hoskins did not seek post-conviction relief in State court.

## II
## Legal Standard

The Court's review of Hoskins' claims is governed by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), because his federal habeas petition was filed after the statute's effective date. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA prevents the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented evidence. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A state court's decision is "contrary to" Supreme Court law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The "unreasonable application" clause is reserved for decisions that either fail to identify the correct governing law, or identify the correct governing law but misapply it to the case. *Id*. at 407. Under this standard, a state court's decision will not warrant federal habeas relief unless its application of federal law is both incorrect *and* unreasonable. *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004) (emphasis in original) (citation omitted). A reviewing habeas court considers only the state court's conclusion when determining whether there has been an unreasonable application of federal law, not the court's reasoning in reaching the decision. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

When considering whether the state court's decision was based on unreasonably determined facts, the federal court must presume that the state court determined the facts reasonably; it is the petitioner's burden to prove otherwise with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1).

# III
# Analysis

**A.     Amended Indictment**

In his first claim of error, Hoskins complains that the trial court erred in amending the indictment to charge him with domestic aggravated assault when the indictment returned by the grand jury only tracked the language of aggravated assault, thereby requiring him to stand trial for a completely different crime than the one initially charged. *See* Doc. #2 at 6.

The indicted charge against Hoskins was titled "Domestic Aggravated Assault" pursuant to § 97-3-7(4) of the Mississippi Code, and it read, in pertinent part:

> That Trevor Hoskins, on or about the 4th day of July, 2012, in Washington County, did unlawfully, willfully, and feloniously cause or attempt to cause serious bodily harm to Armilla Lucius, a person, by hitting the victim in the head, arm, and ankle with a baseball bat under circumstances manifesting extreme indifference to the value of human life.

Doc. #14-1 at 11. On March 15, 2013, the State filed a motion to amend the indictment to add the language "who had a romantic relationship with or was the girlfriend to TREVOR HOSKINS at the time of the aggravated assault" after the words, " a person" in the indictment. Doc. #14-1 at 71. Finding the amendment to be of form and not substance, and in no way prejudicial to the defendant, the trial court granted the motion to amend on May 21, 2013. *Id.* at 82. Trial commenced on October 2, 2013, some four months later. Doc. #14-3 at 6.

On direct appeal, the appellate court considered the claim now raised in federal habeas and found Hoskins' argument without merit, noting that the amendment to correct a "scrivener's error" was one of form, and that Hoskins had adequate notice of the changes suggested by the State prior to trial.[1] *Hoskins*, 186 So. 3d at 901.

---

[1] Mississippi Uniform Circuit and County Court Rule 7.09 allows indictments to be amended to form only, and only "if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised."

The sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment was so defective that the convicting court had no jurisdiction. *See Riley v. Cockrell*, 339 F.3d 308, 313-14 (5th Cir. 2003). "State law dictates whether a state indictment is sufficient to confer a court with jurisdiction." *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994). In instances where the sufficiency of the indictment "was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case," then the issue is foreclosed on habeas. *Wood v. Quarterman*, 503 F.3d 408, 412 (5th Cir. 2007) (citation omitted). Here, the State courts rejected Hoskins' challenge to the sufficiency of the indictment, thereby implicitly finding the circuit court had jurisdiction. *See Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969) ("[J]urisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged."). Therefore, this issue is not cognizable on federal habeas.

Moreover, the Court notes that the indictment against Hoskins is entitled "domestic aggravated assault" and cites § 97-3-7(4) of the Mississippi Code, which provides, in relevant part:

> (4)(a) When the offense is committed against a . . . a person who has a current or former dating relationship with the defendant . . . a person is guilty of aggravated domestic violence who:
> (i) Attempts to cause serious bodily injury to another, or causes such an injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
> (ii) Attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or
> (iii) Strangles, or attempts to strangle another.
> Upon conviction, the defendant shall be punished by imprisonment in the custody of the Department of Corrections for not less than two (2) nor more than twenty (20) years.

Miss. Code Ann. § 97-3-7(4).

Hoskins had pretrial notice of the amendment and notice of the exact statutory provision under which he was indicted. Therefore, the Court otherwise finds that he has not demonstrated that his rights were infringed. *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994) ("An indictment should be found sufficient unless no reasonable construction of the indictment would charge the offense for which the defendant has been convicted."). Accordingly, this issue is not cognizable, and the Court otherwise finds that the decision rejecting this claim is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law, nor is it based on an unreasonable determination of facts in light of the evidence presented at trial.

**B.    Prior Victim's Testimony**

Hoskins' second federal habeas claim is that the trial court improperly allowed Linda Taylor to testify that she had previously been romantically involved with Hoskins and that he had physically abused her. Hoskins maintains that this testimony constituted improper character evidence that was introduced for the sole purpose of showing his actions in this case were in conformity with his prior bad acts, which is prohibited by Mississippi Rule of Evidence 404(b)[2]. Doc. #2 at 13.

Prior to trial, the State announced that it intended to introduce the testimony of Linda Taylor in order "to prove intent, plan, absence of mistake or accident and knowledge" under Rule 404(b). Doc. #14-1 at 105. The trial court ultimately found Taylor's testimony admissible, finding evidence of "the same incident" highly probative and no more prejudicial than the other evidence in the case. Doc. #14-3 at 74-75. The trial court did, however, give a limiting

---

[2] Rule 404(b) of the Mississippi Rules of Evidence provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

7

instruction concerning the evidence. Doc. #14-1 at 121.

When this issue was decided on direct appeal, the appellate court noted that while evidence of a prior crime is generally inadmissible, it may be admissible if offered to prove a material issue other than the defendant's character, and its probative value is outweighed by its prejudicial effect. *Hoskins*, 186 So. 3d at 902. In this case, the State court found: (1) that "Taylor's testimony was offered to prove the knowledge, intent, lack of mistake, plan, and motive of Hoskins in committing the assault;" (2) that "the probative value of the testimony outweighed the prejudicial effect on Hoskins;" and that (3) even if the admission of Taylor's testimony was error, it was not reversible error, as evidence of Hoskins' guilt was so overwhelming that no fair-minded juror could have arrived at a not-guilty verdict. *Id.*

The rulings of state courts on evidentiary matters are solely issues of state law and "present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994)). Even if prejudicial testimony is admitted in error, "[t]he erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999) (citation omitted).

Lucius testified that Hoskins caused her devastating injuries by beating her with a baseball bat, and numerous law enforcement officers testified that a baseball bat with Lucius' DNA on it was recovered from the room where Hoskins was found sleeping, and that he was taken into custody wearing a blood-stained t-shirt that DNA linked to Lucius. Therefore, the Court finds that Taylor's testimony, even if improperly admitted, did not play a "crucial, critical, and highly significant role" in the jury's verdict. *See Jackson*, 194 F.3d at 656. Accordingly, the

decision rejecting this claim is not contrary to, nor does it involve an unreasonable application of, clearly established federal law, nor is it based on an unreasonable determination of facts in light of the evidence presented at trial.

## IV
## Certificate of Appealability

Hoskins must obtain a certificate of appealability ("COA") before appealing this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which he may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying this standard, the Court concludes that a COA should be denied in this case.

## V
## Conclusion

It is hereby ordered that Hoskins' petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. A final judgment in accordance with this opinion and order will issue today.

**SO ORDERED, THIS** the 13th day of June, 2017.

/s/ Michael P. Mills
**MICHAEL P. MILLS**
**U.S. DISTRICT JUDGE**